UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL PEARSON,

       Plaintiff,

v.                                                                          Case No. 1:07-cv-996
                                                                            Hon. Gordon J. Quist

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for supplemental security income (SSI).

Plaintiff was born on July 7, 1968 and completed school through the 9th or 10th grade (AR 42, 57, 172).[1]  He alleges a disability onset date of July 10, 1990 (AR 57).  Plaintiff filed the present application for SSI on June 3, 2003 (AR 57).[2]  Plaintiff had previous employment as a laborer in an automobile mechanic's shop, car washer and  dishwasher (AR 72-73, 187, 209-10). Plaintiff identified his disabling conditions as back pain, depression, and getting nervous and upset around people  (AR 174-77).

---

[1] Citations to the administrative record will be referenced as (AR "page #").

[2] Although the ALJ's decision refers to a filing date as of April 1, 2004 (AR 18), the application appears to be dated June 3, 2003 (AR 57-60).  In the absence of an alleged error on this issue, the court finds it unnecessary to address this apparent discrepancy in the record.

Plaintiff had previously applied for SSI on March 14, 2001 (AR 18, 41).  In a decision entered May 15, 2003, Administrative Law Judge (ALJ) B. Lloyd Blair found that plaintiff was not disabled (AR 41-48).  In the present case, ALJ Dennis M. Matulewicz found that ALJ Blair's decision was res judicata on the issue of plaintiff's disability through May 15, 2003 (AR 18). Accordingly, the present decision addressed the issue of plaintiff's disability beginning on May 16, 2003 (AR 18).  After administrative denial of plaintiff's claim, ALJ Matulewicz reviewed plaintiff's claim *de novo* and entered a decision denying these claims on January 24, 2007 (AR 18-25).  This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I.  LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence.  42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).   A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only.  This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).  The fact that the record also contains evidence which would have supported a different conclusion does not

undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by his impairments and the fact that he is precluded from performing his past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003).

However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*  If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases. *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993). *See Brooks v. Sullivan*, No. 90-5947, 1991 WL 158744 at *2 (6th Cir. Aug. 14,1991) ("[t]o establish medical eligibility for SSI, plaintiff must show either that he was disabled when he applied for benefits . . . or that he became disabled prior to the Secretary's issuing of the final decision on this claim . . . 20 C.F.R. §§ 416.335, 416.330").

## II.  ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation.  Following the five steps, the ALJ initially found that plaintiff  had not engaged in substantial gainful activity since May 16, 2003 (AR 20).  Second, the ALJ found that he suffered from severe impairments of low back pain, hallucinations, arthritis of the right knee and left arm stiffness (AR 20).   At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 21).

The ALJ decided at the fourth step that plaintiff had the residual functional capacity

(RFC):

> to lift or carry a maximum of 10 pounds occasionally and 5 pounds frequently.  In an
> eight-hour workday, the claimant can stand or walk for six hours and sit for six hours.
> He needs the option to sit or stand at will.  The claimant should never use ladders,
> scaffolds, or ropes.  He should only occasionally use ramps or stairs, stoop, crouch
> , kneel, crawl or balance.  The claimant should only occasionally bend, twist or turn
> at the waist/neck.  He can only do simple unskilled work with a specific vocational
> preparation (SVP) rating of 1 or 2 only; jobs that will allow the claimant to receive
> minimal instructions from a supervisor; jobs that [do] not require working in close
> physical proximity of co-workers; and work requiring brief and superficial contact
> with the general public.

(AR 22).  The ALJ found that plaintiff could not perform any of his past relevant work (AR 23).

At the fifth step, the ALJ determined that plaintiff had the RFC to perform a range

of light work (AR 24).  Specifically, the ALJ found that plaintiff could perform the following work

in the regional economy (Lower Peninsula of Michigan): hand packager (1,000 jobs); equipment

cleaner (500 jobs); parking lot attendant (500 positions); sorter (500 positions); and inspector (500

positions) (AR 24).  Accordingly, the ALJ determined that plaintiff had not been under a disability

"since April 1, 2004, the date the application was filed" and entered a decision denying benefits (AR

27-28).

## III.  ANALYSIS

Plaintiff raised five issues for review.

> **A.      Did the ALJ base his decision on the substantial evidence of the whole
> record?**

Plaintiff's brief on this issue consists of legal standards of review and conclusory

statements such as,  "[i]t is clear from an evaluation of this record that the ALJ did not meet the

burden of proof to show this claimant was employable" and that "the ALJ must account for the

reasons to fail to give credibility to this claimant and that was not done in this case."   Plaintiff's

Brief at 24.  Plaintiff presents no legal or factual basis  to support his position.  "[I]ssues adverted

to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed

waived.  It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving

the court to  . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).

A court need not make the lawyer's case by scouring the party's various submissions to piece

together appropriate arguments.  *Little v. Cox's Supermarkets*,  71 F.3d 637, 641 (7th Cir. 1995).

Accordingly, plaintiff is not entitled to relief on this alleged error.

> **B.      Did the ALJ err in failing to include the psychiatric disorder and cognitive disorder in the hypothetical questions?**

Plaintiff presents a two-sentence argument on this issue:

> The ALJ's hypothetical failed to factor in any of the issues of the psychosis and cognitive impairment in this case.  Therefore, the hypothetical question asked to vocational expert failed to include the relevant pertinent information.

Plaintiff's Brief at 25.

An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful

activity that exists in the national economy must be supported by substantial evidence that the

plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and*

*Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).  This evidence may be produced through reliance

on the testimony of a VE in response to a hypothetical question which accurately portrays the

claimant's physical and mental impairments.  *Id.*   However, a hypothetical question need only

include those limitations which the ALJ accepts as credible.  *See Blacha v. Secretary of Health and*

*Human Servs.*, 927 F.2d 228,  231 (6th Cir. 1990).  *See also Stanley v. Secretary of Health and*

*Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals").

Here, the ALJ's hypothetical question assumed, in pertinent part, an individual:

> Who can only do simple, unskilled work with an SVP rating of one or two.  Work that would not [sic] working in close, I'm sorry, proximity to co-workers or work that  would involve minimal contact with and minimal direction from a supervisor.  And that would require only brief and superficial contact with the general public, and work that would mandate producing a [sic] specific pieces per hour, and does not have a down line or up line dependent co-worker.

(AR 211).

Contrary to plaintiff's contention, the ALJ's hypothetical question addressed his cognitive impairments by limiting plaintiff to simple, unskilled work involving minimal contact with supervisors and other employees (AR 211).  This restriction is consistent with the RFC determination made by the non-examining state agency psychiatrist, Thomas Tsai, M.D., who found that due to a cognitive disorder, psychosis and history of alcohol abuse, plaintiff had moderate impairments in his abilities to: maintain attention and concentration; perform activities with persistence and pace; complete a normal workday and workweek; accept instruction and respond appropriately to criticism; and respond appropriately to changes in work setting (AR 117).  Given these impairments, Dr. Tsai conclude that plaintiff had the RFC to perform unskilled work (AR 117).  Plaintiff is not entitled to relief on this alleged error.

**C.      Did the ALJ err in failing to give controlling credibility to the Social Security expert, Leonard McCullough [sic], that found psychosis and a GAF of 40?**

Plaintiff's argument on this issue consists of the following cryptic statement:

> This decision is silent on the issues of why this judge failed to give credibility to an expert witness, Leonard McCullough.  A mere number of 40 for a GAF is not sufficient to determine disability.  However, in order to discount that expert opinion

> given to the Social Security Administrations [sic] by their own evaluator [sic].  The
> ALJ failed to explain any rationale as to why no credibility was give [sic] to expert
> McClullough [sic].

Plaintiff's Brief at 25.[3]

   L. J. McCulluch, M.A., limited licensed psychologist examined plaintiff on June 19,

2004 (AR 110).  Lois P. Brooks, Ed. D. co-signed Mr. McCulloch's report of the examination (AR

110).  The ALJ's decision discussed the report, noting: plaintiff's self-report of auditory

hallucinations and suspiciousness; and Mr. McCulloch's statements that plaintiff's "stream of mental

activity was hard to follow, vague and disorganized," and that plaintiff "gave no response or looked

around the room during the mental examination" (AR 21).  The ALJ noted plaintiff's diagnoses of

a psychotic disorder, not otherwise specified; cognitive disorder, not otherwise specified; history

of alcoholism, alleged 5 months abstinence; and Mr. McCulloch's opinion ruling out "partial

malingering" (AR 21).  After this examination Mr. McCulloch assigned plaintiff a global assessment

of functioning (GAF) score of 40.[4]  This score lies within the 31to 40 range, which is described as

follows:

> Behavior is considerably influenced by delusions or hallucinations OR serious
> impairment in communication or judgment (e.g., sometimes incoherent, acts grossly

---

[3] Plaintiff refers to Mr. McCulloch as Leonard "McCullough."

[4] The GAF score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning" on a hypothetical continuum of mental health-illness.  American Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)*, (4th ed., text rev., 2000), pp. 32, 34.  The GAF score is taken from the GAF scale, which rates individuals' "psychological, social, and occupational functioning," and "may be particularly useful in tracking the clinical progress of individuals in global terms."  *Id*. at 32. The GAF scale ranges from 100 to 1.  *Id.* at 34.  At the high end of the scale, a  person with a GAF score of 100 to 91 has "no symptoms." *Id.*  At the low end of the GAF scale, a person with a GAF score of 10 to 1 indicates "[p]ersistent danger of hurting self or others (e.g., recurrent violence) OR persistent inability to maintain minimal personal hygiene OR serious suicidal act with clear expectation of death." *Id.*

inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g., stays in bed all day; no job, home or friends).

*DSM-IV-TR* at p 34.

However, Mr. McCulloch also found that plaintiff's "[m]ental status results are suspect" (AR 108).  For example, Mr. McCulloch made the following "general observations":

He looks taller than his reported height of 5'7" and heavier than his weight of 165.  He looks more like 5'11" and about 180.  [He] fumbled through his wallet for something when asked about his height and weight.  He said he doesn't drive and has no driver's license.  He used to.  He got a ride here today from a friend or a relative.  He was dressed in casual pants with a wrinkly T-shirt on.  His hygiene was adequate.  He didn't make good eye contact.  Often during the mental status he would give no response and look about the room.  I couldn't tell if he was hearing voices that interfered with his attention and concentration or whether he wasn't trying to answer the question.  He was generally slow-minded.

(AR 108).[5]

The record reflects that the ALJ considered Mr. McCulloch's evaluation.  Although Mr. McCulloch found that plaintiff's mental status results were suspect, the ALJ took Mr. McCulloch's opinions into account, as evidenced by finding that plaintiff had a severe impairment of hallucinations and other limitations.  Accordingly, plaintiff is not entitled to relief on this alleged error.

> **D.     Did the ALJ err in failing to give credibility to the claimant without reasonable explanation?**

---

[5] Even if plaintiff had a valid GAF score of 40, plaintiff's counsel recognized that a disability determination cannot be based solely on plaintiff's GAF score (AR 23).  *See* Plaintiff's brief at 25.  It appears that other examiners have questioned the validity of plaintiff's alleged mental impairments.  In contrast to ALJ Matulewicz's 2007 decision which found a severe impairment of hallucinations, ALJ Blair's 2003 decision found no severe mental impairment other than a learning disorder (AR 47).  There is no mention of hallucinations in plaintiff's three psychological examinations referenced in the 2003 decision (AR 44).  Like Mr. McCulloch, a previous psychological examiner concluded that plaintiff's intelligence testing was invalid, noting that "[t]hroughout the evaluation, the claimant exhibited a pervasive sense of entitlement, disinterest in the evaluation process, and very minimal motivation" (AR 44).

Plaintiff's entire argument on this issue is as follows:

"The reasons given by this ALJ to deny credibility are

1.       A record of June of 2004 did not mention he had depression [sic]

2.       He had a sporadic work history [sic]

These are not sufficient to discount all the testimony of this claimant."

Plaintiff's Brief at 26.

Once again, plaintiff has failed to provide the court with a reasoned legal argument to support this alleged error.  Upon review of the record, the court concludes that the ALJ did give sufficient reasons for discounting plaintiff's credibility.  An ALJ may discount a claimant's credibility where the ALJ  "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).   *See Casey v. Secretary of Health and Human Servs.*,  987 F.2d 1230, 1234 (6th Cir. 1993) (an ALJ's credibility determinations are accorded deference and not lightly discarded).  *See Sullenger v. Commissioner of Social Security*, No. 07-5161, 2007 WL 4201273 at *7 (6th Cir. Nov. 28, 2007) ("[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact").

Here, the ALJ noted that plaintiff's "activities and lifestyle detract from suggestions that [he] is incapable of sustaining all substantial gainful activity by virtue of a mental impairment," and that plaintiff was capable of "performing tasks that are simple, routine and repetitive in nature" (AR 23).  The ALJ noted that plaintiff had been treated for back pain only three times from April 2004 through January 2007, despite testifying that his pain level was an 8 or 9 out of 10 in severity

(AR 23). The ALJ also found that plaintiff declined to participate in range of motion testing and most of the exercise testing with consultative examiner Elaine Koutanis, M.D. in July 2004 (AR 21). The doctor described plaintiff as "well built and muscular, poor eye contact with volatile temper" (AR 112). However, plaintiff's physical examination was limited because he declined to participate in most testing (AR 113). When Dr. Koutanis asked plaintiff about his reported hallucinations, plaintiff indicated that he had both auditory and visual hallucinations, but did not want to talk about it (AR 111). Rather, plaintiff stated that "he was at a doctor a couple of weeks ago for disability and reported this part of his story" (AR 111).

The ALJ acknowledged Mr. McCulloch's finding that plaintiff's mental status results were suspect, as well as finding inconsistencies in plaintiff's testimony, e.g., while plaintiff testified at the hearing that he had visual hallucinations, plaintiff reported to Mr. McCulloch that he did not have visual hallucinations (AR 23, 108). The ALJ also observed: that plaintiff had very little treatment for his physical impairments since May 2003; that he had a normal gait with no neurological defects; that while he claimed to be depressed, plaintiff reported to Mr. McCulloch that he was not depressed; that he received no psychological or psychiatric treatment; that plaintiff did not need a structured living arrangement; and that plaintiff had not been fully compliant with the medical treatment he has received (AR 23). Finally, the ALJ observed that plaintiff "has a very sporadic work history, which may be indicative of someone who is not real motivated to work" (AR 23).

The ALJ's decision pointed out contradictions between plaintiff's testimony and the medical records. *Walters*, 127 F.3d at 531. There is no compelling reason to disturb the ALJ's

credibility determination.  *Smith*, 307 F.3d at 379.  Accordingly, plaintiff is not entitled to relief on this alleged error.

### E.     Did the ALJ err in failing to give credibility to the claimant's friend, Katrina Chetterster without reasonable explanation? [6]

Plaintiff's final argument consists of a two sentence statement:

> There is no reason given in this decision for failing to give any credibility to Katrina Chetterster.  This decision is silent as to that issue.

Plaintiff's Brief at 26.  Plaintiff's cryptic argument is unsupported by the record.  The ALJ recounted Ms. Chetterster's statements that she used to live with plaintiff, that she has not lived with him for about one year due to his depression, and that plaintiff "did not do anything around the house except lie in bed or on the couch and watch television" (AR 22).  The ALJ then found both plaintiff's and Ms. Chetterster's statements not credible (AR 22-23).  Plaintiff is not entitled to relief on this alleged and unsubstantiated error.

### IV.     Recommendation

Accordingly, I   respectfully recommend that the Commissioner's decision be affirmed.


Dated:  February 18, 2009                              /s/ Hugh W. Brenneman, Jr.
                                                       HUGH W. BRENNEMAN, JR.
                                                       United States Magistrate Judge

---

[6] The ALJ refers to this witness as "Katrina Chedester."

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within eleven (11) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).